**The below described is SIGNED.**

**Dated: July 12, 2007**

_____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>BRANDON L. MILLER and<br>AMY L. MILLER,<br><br>Debtors. | Bankruptcy Number:  07-20270<br><br>Chapter 13 |

**MEMORANDUM DECISION FINDING NONCOMPLIANCE WITH § 521(a)(1)(B)(iv)
AS TO BRANDON L. MILLER ONLY**

This case once again requires the Court to visit the automatic dismissal provisions of 11 U.S.C. § 521(a)(1)(B)(iv) and (i).[1]  The Debtors argue that the documents filed by Brandon L. Miller (Miller) constitute statutorily sufficient "other evidence of payment" and challenge the constitutionality of automatic dismissals of bankruptcy cases.  The Court concludes that neither argument is persuasive and that Miller's case was automatically dismissed on the 46th day after the petition filing date.

---

[1]   Future statutory references are to title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), unless otherwise noted.

## I. BACKGROUND

The material underlying facts in this case are undisputed. The Debtors filed a bankruptcy petition on January 24, 2007,[2] and § 521(a)(1)(B)(iv) required the Debtors to file "copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor[s] from any employer of the debtor[s]." In this case, the 60-day prepetition period ranged from November 24, 2006 to January 23, 2007. The Debtors each timely filed a Payment Advices Certification and supporting documentation in an attempt to comply with § 521(a)(1)(B)(iv).

The Payment Advices Certification filed by Miller alleged that he had "attached [t]hereto, or previously filed with the Court, copies of all payment advices or other evidence of payment received from any employer within 60 days before the date of the filing of [his] bankruptcy petition." The supporting documentation filed in connection with Miller's Payment Advices Certification consisted of three payment advices from his employer John Paras Furniture for the December 5, 2006, December 20, 2006, and January 20, 2007 pay dates. Rather than filing a payment advice from John Paras Furniture for the missing January 5, 2007 pay date, Miller included a detailed chart prepared by Debtors' counsel that included gross income, withholding, and net income information for all four pay dates that Debtor's counsel had apparently extrapolated from the three available payment advices.

Although neither the Debtors nor the Chapter 13 Trustee raised the issue at the May 2, 2007 confirmation hearing, the Court inquired as to the sufficiency of the payment advices filed

---

[2]     The original petition was filed under chapter 7, and the Debtors voluntarily converted to chapter 13 fifteen days later. The conversion does not impact the reasoning of this decision.

by Miller because the payment advice for the January 5, 2007 pay date appeared to be missing.[3]

Debtors' counsel indicated that although Miller had received such a payment advice, he did not have and was unable to obtain a copy of it from his employer. Instead, Debtors' counsel argued that year-to-date information on the January 20, 2007 payment advice constituted sufficient "other evidence of payment" under § 521(a)(1)(B)(iv). This was so, in his view, because the January 20, 2007 payment advice was only the second one Miller had received in 2007; therefore, subtracting the current information for the January 20, 2007 pay date would necessarily yield the gross income, withholding, and net income information on the missing payment advice.[4]

Because Amy L. Miller complied with the filing requirements of § 521(a)(1) and met the confirmation requirements of § 1325, the Court confirmed the proposed chapter 13 plan as to Amy L. Miller only. The Court also allowed the parties to brief the payment advice issue. The Debtors filed a timely brief on May 24, 2007 along with a Notice of Claim of Unconstitutionality with respect to the automatic dismissal provision of § 521(i)(1). Counsel for the Chapter 13 Trustee filed a timely responsive brief, to which the Debtors then replied.[5] The Court has thoroughly reviewed the briefs in connection with the oral arguments made at the confirmation

---

[3] *In re Wilkinson*, 346 B.R. 539, 544-45 (Bankr. D. Utah 2006) (discussing the Court's statutory and jurisdictional duties).

[4] The Debtors specifically did not argue that the chart created by Debtors' counsel was sufficient "other evidence of payment." The Debtors also did not address the possibility that the January 20, 2007 payment advice contained errors, a situation that this Court has confronted in at least one other case to date.

[5] The Court sent the notice of the constitutional challenge to the United States Attorney General and the United States Attorney for the District of Utah in accordance with 28 U.S.C. § 2403, Federal Rule of Bankruptcy Procedure 7024, and Local Rule 7024-1(a), but neither of them has intervened in this case.

hearing and has made an independent inquiry into applicable case law. For the reasons stated below and in this Court's prior decisions of *In re Fawson*[6] and *In re Wilkinson*,[7] the reasoning of which is specifically incorporated herein, the Court holds that Miller did not comply with § 521(a)(1)(B)(iv), that the automatic dismissal provision of § 521(i)(1) is constitutional, and that Miller's case was "automatically dismissed effective on the 46th day after the date of the filing of the petition" under § 521(i)(1).

## II.  DISCUSSION

**A.    Miller's Compliance with § 521(a)(1)(B)(iv) Based on "Other Evidence of Payment"**

As mentioned above and "unless the court orders otherwise," § 521(a)(1)(B)(iv) requires debtors to file "copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor[s] from any employer of the debtor[s]." In turn, § 521(i)(1) provides that "if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under [§ 521(a)(1)] within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition."

The single statutory interpretation issue presented by this case is whether the year-to-date information supplied on Miller's January 20, 2007 payment advice is sufficient "other evidence of payment" under § 521(a)(1)(B)(iv) such that Miller's case was not automatically dismissed.[8]

---

[6]     338 B.R. 505 (Bankr. D. Utah 2006).

[7]     346 B.R. 539 (Bankr. D. Utah 2006).

[8]     The Debtors spent a significant portion of their initial brief discussing the definition of "payment advice." Defining the precise boundaries of the term "payment advice" is unnecessary in this case and beyond the scope of this opinion, but the Court agrees with both the Debtors and the Chapter 13 Trustee that the term "payment advice" is not limited to pay stubs attached to debtors' paychecks. Even

The Court is aware of only three reported decisions that specifically address this issue, all of which have concluded that such information may be sufficient at least under the facts of a particular case.[9]

In *Luders*, the court concluded "with little analysis or explanation"[10] that year-to-date information on the debtors' payment advices was sufficient "other evidence of payment" under § 521(a)(1)(B)(iv). Likewise in *Reynolds*, the court rather summarily found that year-to-date information was sufficient to constitute "other evidence of payment received within 60 days before the date of the filing of the petition" because of the "very clear picture" presented by the payment advices that were filed by the debtor but stated that "[s]uch determinations must be made on a case-by-case basis."[11]  The *Tay-Kwamya* decision gives a more thorough analysis for its holding but explicitly bases its fact-specific ruling on "equity and efficiency" as evidenced by "the totality of the Debtor's circumstances and quality of the other evidence provided by the Debtor to the Chapter 7 Trustee."[12]

---

the Payment Advices Certification provided on the Court's own website (and used by the Debtors in this case) contains a non-exhaustive list of documents constituting "payment advices" such as "pay stubs attached to your paycheck, employer's statements of hours and earnings, deposit notifications. . . etc."

[9]     *In re Luders*, 356 B.R. 671 (Bankr. W.D. Va. 2006); *In re Tay-Kwamya*, — B.R. —, 2007 WL 1175890 (Bankr. S.D.N.Y. Apr. 23, 2007); *In re Reynolds*, — B.R. —, 2007 WL 1695091 (Bankr. N.D. Okla. June 5, 2007); *see also Svigel v. Stewart (In re Svigel)*, No. WY-07-020, 2007 WL 1747117 (10th Cir. BAP June 18, 2007) (remanding case to bankruptcy court to consider debtor's argument regarding the sufficiency of year-to-date information for § 521(a)(1)(B)(iv) purposes). *Cf. In re Cloud*, 356 B.R. 544 (Bankr. N.D. Okla. 2006) (finding that payment advices submitted for the wrong 60-day period were insufficient without specifically addressing the year-to-date issue).

[10]    *Reynolds*, 2007 WL 1695091 at *3.

[11]    *Id.*

[12]    *Tay-Kwamya*, 2007 WL 1175890 at *1, 6.

The difficulty with all three of these decisions is that they do not analyze the language of § 521(a)(1)(B)(iv), instead either implicitly or explicitly invoking equitable considerations to reach arguably just results in their respective cases.  But in this Court's view, analysis of the statutory language is the starting point and ultimately the ending point of the inquiry,[13] and such an analysis produces a result at odds with the results reached by the aforementioned opinions.

In reaching this conclusion, it is both necessary and sufficient for the Court to parse the language of § 521(a)(1)(B)(iv).  The critical word in § 521(a)(1)(B)(iv) is the verb "received." Apart from the word "file," "received" is the only verb in the § 521(a)(1)(B)(iv) sentence.[14] Thus, a question arises as to whether "received" modifies only the second word "payment" or the word "evidence" as part of the noun phrase "evidence of payment."  The Debtors, and apparently the three decisions referenced above, take the former view that "other evidence" is sufficient if it gives enough information to determine what *payment* was received by debtors in the 60-day prepetition period rather than requiring that copies of all of the actual documentary *evidence* received in the 60-day prepetition period be provided.  Under this view, the phrase "of payment received within 60 days before the date of the filing of the petition" is merely a lengthy prepositional phrase modifying the word "evidence."

---

[13]     "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotes omitted); *In re Hanks*, 362 B.R. 494, 502 (Bankr. D. Utah 2007) ("[A] harsh or even illogical result is not the same thing as an absurd result, and this Court must therefore interpret the statute according to its own terms.").

[14]     Although § 521(a)(1)(B)(iv) is part of a list ending in a semicolon, in calling it a "sentence" the Court is treating it as though it ended with a period.  The analysis is unaffected by this concept.

But reading that part of the sentence in this way makes the rest of the sentence incoherent. The logic of the Debtors' statutory reading would produce the following result with respect to the first part of § 521(a)(1)(B)(iv): "The debtor[s] shall file copies of all payment advices . . . by the debtor from any employer of the debtor." There is no longer a second verb in the sentence or any temporal limitation, and the sentence is rendered unintelligible. Indeed, there is no coherent reading of the sentence that can switch the statute's focus from the documents themselves to the content of those documents.

The only coherent and consistent reading of the statute has the verb "received" taking the subject nouns "advices" and "evidence," which themselves are part of a prepositional phrase modifying the word "copies." Under this reading, debtors have to file copies of one of two things — either "all payment advices" received from an employer within the 60-day prepetition period or "all . . . other evidence of payment" received from an employer within the 60-day prepetition period.[15] And although grammatically complex, the Court finds no ambiguity in § 521(a)(1)(B)(iv) that would justify a resort to legislative history or equitable considerations.[16]

---

[15] Although apparently not asserted by the Debtors, it might be suggested that the adjective "all" only modifies the term "payment advices" such that debtors might be required to file either *all* payment advices or *some* other evidence of payment. Such a reading would be nonsensical not only because of its inconsistency but because it would effectively allow debtors to file whatever "something" that they wished.

[16] Unquestionably, the ultimate purpose of § 521(a)(1)(B)(iv) is an intriguing ground for speculation. On the one hand, debtors are required to calculate their "current monthly income" as an average of all income received "during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A). On the other hand, "evidence of current income such as the most recent payment advice" must be provided to the trustee at the § 341 meeting under Federal Rule of Bankruptcy Procedure 4002(b)(2)(A) and actual current income is also set forth on Schedule I. The curious 60-day period of § 521(a)(1)(B)(iv) lies somewhere in between. Perhaps this requirement is for the benefit of creditors' review of debtors' finances, but any assertion regarding the intent of § 521(a)(1)(B)(iv) would be idle speculation because the language of the statute is clear.

There is simply no room in the statute for "substantial compliance" or similar equitable theories; either the required documents are filed or they are not.[17]

And it does no good in this case to assert that the year-to-date information contained in the January 20, 2007 payment advice somehow substitutes as the actual January 5, 2007 payment advice, arguing that it provides evidence by extrapolation of the content of the actual missing payment advice. An extrapolation made by Debtors' counsel or the Court is not evidence received from the employer. It is, instead, an assumption of what the employer might have provided during the relevant period, and if relied upon, is likely to lead to incorrect assumptions. The detailed chart prepared by Debtors' counsel illustrates the point. It states that for the January 5, 2007 pay period, Miller's gross income was $1,156.19 and, after subtracting various extrapolated deductions, concludes that his net income was $818.45. However, on the January 20, 2007 payment advice, the current net pay figure is $613.84 and the year-to-date net income figure is $1,554.77, leaving $940.93 as the amount that could be attributed to the January 5, 2007 payment advice. But all such calculations are merely speculation and do not comply with the statute that requires that what was received by Miller from his employer, be it the actual payment advice or the actual "other evidence" received by him *for that pay period*, be filed.[18]

Based on the Court's reading of § 521(a)(1)(B)(iv), the Court must find that Miller failed to comply with its terms. Miller admittedly received either a payment advice or other evidence

---

[17] *See Wilkinson*, 346 B.R. at 545.

[18] The Court does not believe that its position forecloses the possibility of an *employer's* postpetition re-creation of the payment advices or other evidence of payment received within the 60-day prepetition period, as when the debtor has lost the original but receives either a replacement copy or the identical information in a different format from the employer. Of course, § 521(i)(3) and (4) are also available tools in appropriate circumstances.

of payment from his employer for the January 5, 2007 pay date within the statutory 60-day prepetition period. As such, that document was among the papers that had to be filed within 45 days of the petition date in order for Miller to avoid having his case automatically dismissed. The document was not filed, and no request to extend or excuse the filing was made under § 521(i)(3) or (4).[19] Therefore, Miller's case was automatically dismissed effective on the 46th day, which in this case was March 13, 2007.[20]

### B. Constitutionality of Automatic Dismissal

Alternatively, the Debtors challenge the constitutionality of § 521(i)(1)'s automatic dismissal provision as providing inadequate procedural due process. It is not totally clear from the Debtors' initial brief and reply brief whether the challenge is facial, as-applied, or both, but the Court addresses both arguments and finds that neither of these positions has merit.

#### 1. Facial Challenge

The United States Supreme Court has made clear that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."[21] The Fifth Amendment to the United States Constitution protects individuals from deprivations of "life,

---

[19] The Court notes that it has seen no § 521(i)(4) motions and only a handful of § 521(i)(3) requests to date.

[20] This is so because the 45th day fell on a Saturday, and the Court reads Federal Rule of Bankruptcy Procedure 9006(a) as "extending" the 45th day until Monday, March 12. Accordingly, the effective date of dismissal would be Tuesday, March 13. Also, to the extent that the Debtors challenge the automaticity of "automatic dismissals," the Court has thoroughly discussed and rejected such arguments in both *Fawson* and *Wilkinson*.

[21] *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).

liberty, or property, without due process of law."[22]  Accordingly, the threshold inquiry for any procedural due process claim is whether the claimant has been deprived of a protected interest in "life, liberty, or property" — in this case, "property."[23]  Only then does a court need to analyze whether the deprivation occurred without the "appropriate" amount of process.[24]

The Debtors' procedural due process claim fails both aspects of the inquiry.  First, when dealing with Fifth Amendment due process violations, the Court must consider whether federal law has created a cognizable and protected property interest.[25]  But there is no such federally protected property interest at stake in this case.  The Supreme Court has long held that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy."[26]  The nation's bankruptcy laws are a matter of legislative largesse and do not provide debtors with constitutionally protected interests in the mere continued existence of a bankruptcy case.  Automatic dismissals under § 521(i)(1), absent other grounds for dismissal, are also without prejudice to the refiling of a bankruptcy petition.[27]  With neither the right of access to file for bankruptcy relief nor the discharge of debts in bankruptcy having constitutional significance, the

---

[22] *Fed. Lands Legal Consortium ex rel. Robart Estate v. U.S.*, 195 F.3d 1190, 1195 (10th Cir. 1999) (*quoting* U.S. CONST. AMEND. V).

[23] *Id.* (*citing Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).

[24] *Id.*

[25] *Id.*

[26] *U.S. v. Kras*, 409 U.S. 434, 446 (1973); *see also In re Watson*, 332 B.R. 740, 747 (Bank. E.D. Va. 2005) (discussing, in the context of an equal protection challenge, *Kras*' succinct summarization of "the absence of constitutional significance of the right of access to file a bankruptcy petition").

[27] Of course, other issues may arise under the BAPCPA because of prior dismissed cases such as the timing and extent of the automatic stay, *see* § 362(c) and (d), but this does not prevent refiling nor does it affect the due process analysis in any way.

Court simply cannot see how dismissal of Miller's bankruptcy case — automatic or not — deprives him of any federally protected property interest.

Even if some federally protected property interest were found to exist, Miller received constitutionally adequate notice of the proceedings. "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard [at a meaningful time and in a meaningful manner]; and in order that they may enjoy that right they must first be notified."[28] The statute itself provides a clear directive that certain documents must be filed within 45 days after the petition date, or up to 90 days after the petition date if a § 521(i)(3) extension request is timely made and granted.[29] As such, debtors are fully apprised of their filing duties under the Bankruptcy Code that accompany their privilege of bankruptcy relief. It is unclear how much more notice could be provided than to engrain the deadline in the statute itself.[30] And, of course, debtors are permitted to petition the bankruptcy court at any time regarding their compliance with § 521(a)(1)'s filing requirements; they are likewise free to challenge any erroneous determinations under § 521(i)(1) that the Court might make. Ultimately, any failure to comply with the statute cannot be grounded on a lack of notice as to its procedural or substantive mandates.

---

[28]   *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (internal quotes omitted).

[29]   Full compliance with the requirements of § 521(a)(1)(B)(iv), and *only* that subsection of § 521(a)(1), can also be excused in certain circumstances on motion by the trustee.

[30]   *Texaco, Inc. v. Short*, 454 U.S. 516, 545-46 (1982) (stating that "[t]he rule that ignorance of the law will not excuse is deep in our law" and operates when "the failure to act [is] under circumstances that should alert the doer to the consequences of his deed") (internal quotes omitted).

### 2. As-Applied Challenge

As applied to Miller's case specifically, the Debtors argue that § 521(i)(1) requires the exercise of judicial decision-making power to determine compliance and cannot be delegated to a clerk or other administrative officer. The Court wholly agrees and has never delegated such authority. Although this Court stated as much in its *Wilkinson* opinion,[31] the Debtors' confusion on this point is nonetheless understandable because it is indeed the clerk's office that issues Notices of Dismissal once § 521(i)(1) has been found to be applicable.[32] But the underlying determination is always made by the Court,[33] and the clerk's only function is to issue the Notices of Dismissal that the Court has found to be appropriate. In fact, as in Miller's case, the Court's determination of a debtor's compliance with § 521(i)(1) often occurs as a result of chapter 13 confirmation hearings during which any § 521(a)(1) filing deficiencies are specifically addressed. Therefore, Miller has no basis for an as-applied challenge to § 521(i)(1) in this case.

### III. CONCLUSION

Although the specific issue of year-to-date "other evidence of payment" was not before the Court in its *Wilkinson* decision, the ultimate conclusion in this case is the same. "[E]ither all pay advices received by the Debtor[s] were timely filed with the Court or they were not. They

---

[31] *Wilkinson*, 346 B.R. at 543-44.

[32] The Court does this to make clear that issuance of the Notice of Dismissal is purely a ministerial act based on the statute's dismissal of the case (as determined by the Court) rather than an exercise of discretion by the Court in deciding to dismiss a case.

[33] *Wilkinson*, 346 B.R. at 543-44 ("[T]he word 'automatic' as used in the statute is true only in the metaphysical sense that a case no longer exists as of a particular date. But court systems simply do not operate automatically, and humans are tasked with the responsibility of determining whether a case is subject to § 521(i) dismissal which will necessarily occur only after the 45th day has run. . . . The Court does its best to complete this process of determining which cases have been dismissed under § 521(i) correctly and in a timely fashion, but there are inevitably cases in which a determination cannot be made until the Court receives some further guidance from the parties themselves.") (internal quotes and citations omitted).

were not, and specific consequences follow therefrom. The Court simply cannot do violence to a specific statutory scheme in the name of equity."[34] In this case Miller did not comply with § 521(a)(1)(B)(iv), and § 521(i)(1) constitutionally operated to automatically dismiss Miller's case on the 46th day after the petition filing date. A separate Notice of Dismissal to that effect shall be issued by the clerk's office.

-----------------------------------------END OF DOCUMENT-----------------------------------------



---

[34] 346 B.R. at 545.

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION FINDING NONCOMPLIANCE WITH § 521(a)(1)(B)(iv) AS TO BRANDON L. MILLER ONLY** will be effected through the Bankruptcy Noticing Center to each party listed below.


Brandon L. Miller
Amy L. Miller
6086 West Bona Dea Blvd.
West Valley City, UT  84120
    *Debtors*

Stephen M. Enderton
234 East 3900 South
Suite One
Salt Lake City, UT  84107
    *Counsel for Debtors*

J. Vincent Cameron
47 West 200 South
Suite 600
Salt Lake City, UT  84101
    *Chapter 13 Trustee*

United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT  84111